676 A.2d 662

**COMMONWEALTH of Pennsylvania**

v.

**Robert Arthur MYERS, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 10, 1995.

Filed March 26, 1996.

Reargument Denied June 11, 1996.

---

Donald E. Lewis, Meadville, for appellant.

Mark D. Waitlevertch, Assistant District Attorney, Meadville, for the Commonwealth, appellee.

Before CIRILLO, POPOVICH and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

Once again, we are called upon to determine whether a defendant's comments were "oral communications" within the Wire-tapping and Electronic Surveillance Control Act (Act), 18 Pa.C.S.A. § 5701, *et seq.* Finding that such comments were properly within the Act, we reverse and remand for retrial.

On October 1, 1993, Larry Whitmore met with Pennsylvania State Trooper Danny Lloyd concerning two 1989 robberies of a Ponderosa steakhouse. After implicating appellant Robert Arthur Myers in these crimes, Whitmore consented to wearing an electronic recording device on his body while attempting to

elicit incriminating statements from Myers. Further, Whitmore agreed that his encounter with Myers would take place on October 14, 1993.

On the date of the encounter, Whitmore, who had been fitted with a body recorder and transmitter, travelled to Myers' home, which was on a large isolated plot of land. What transpired next is best summarized by the trial court:

> [Whitmore] found [Myers] not at home and walked from [Myers'] home to his parents' residence up the road. Before he got to [Myers'] parents' residence, [Myers] came out to greet him and they walked back to [Myers'] residence.
>
> During the course of a subsequent approximately 15 minute conversation, [Myers] made statements that could constitute inculpatory evidence with respect to the current prosecution.
>
> Whitmore had been instructed that he should not engage in conversation that might be incriminating to [Myers] while in [Myers'] residence. Accordingly, once Whitmore and [Myers] arrived at [Myers'] trailer, [Myers] went inside and apparently sat on a couch and Whitmore attempted to stay out of the trailer and talk to [Myers] from a porch adjoining the trailer. Whitmore did indicate on one occasion he went in briefly to get a beer from the refrigerator and then returned to the porch area. He further testified that during their conversation there was no screen door in place and the door to the trailer was left open and the couch on which the defendant was seated was about two feet to the left of the door.

Opinion, 10/26/94 at 3–4.

On November 12, 1993, the Pennsylvania State Police filed charges against Myers concerning the steakhouse robberies. Subsequently, Myers filed a motion to suppress the tape which Whitmore's body recorder had produced. Said motion was denied by the trial court, and, consequently, the Commonwealth introduced the tape into evidence at Myers' jury trial. Ultimately, the jury found Myers' guilty on two counts of robbery, for which he was later sentenced to 10–to–30 years

imprisonment plus restitution. In this timely appeal, Myers contends the trial court erred in refusing to suppress the tape produced by Whitmore's body recorder, because the Commonwealth had failed to obtain an order from a Superior Court judge authorizing this recording.

The Wiretapping and Electronic Surveillance Control Act (the Act) prescribes criminal penalties for wiretapping and other interceptions of oral communications. *Commonwealth v. Brion,* 539 Pa. 256, 258, 652 A.2d 287, 288 (1994); 18 Pa.C.S.A. § 5703. The Act also authorizes law enforcement officers to engage in such activities subject to a stringent procedure for showing probable cause before a Superior Court judge. *Brion, supra. See* 18 Pa.C.S.A. §§ 5708–5726. If an order from a Superior Court judge is not obtained, however, an aggrieved person in any trial "may move to suppress the contents of any ... oral communication [on the ground that] [t]he communication was unlawfully intercepted." 18 Pa. C.S.A. § 5721(a).

Instantly, the Commonwealth concedes that the police never obtained a Superior Court order authorizing its recording. Nevertheless, the Commonwealth attempts to circumvent this requirement by alleging that Myers' statements to Whitmore were not "oral communications" and, thus, the Act should not apply. We disagree.

An "oral communication," for purposes of the Act, is "[a]ny oral communication uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 Pa. C.S.A. § 5702. A great deal of ink has been expended in this state's law books, however, attempting to define what constitutes such a justified expectation. During recent years, this issue has been jostled between our esteemed court and our state's distinguished Supreme Court. The aftermath of this activity: our state has been left with a coherent and just approach for making such a determination.

In *Commonwealth v. Schaeffer,* 370 Pa.Super. 179, 536 A.2d 354 (1987) (*en banc* ), Judge Cirillo wrote upon the subject in a most eloquent and insightful manner. In *Schaeffer,* a police

informant brought a recorder inside the defendant's home and, unbeknownst to the defendant, taped his incriminating statements. Since the police had not obtained a proper Superior Court order authorizing the recording, the defendant sought its suppression. Upon the case reaching our court *en banc,* Judge Cirillo identified the issue as being "whether society recognizes as legitimate the ordinary expectation of the individual that his words are not being electronically recorded and transmitted beyond the four walls of his home or office." *Id.* at 206, 536 A.2d at 368. After noting that the defendant's right to privacy was clearly implicated in this inquiry, our distinguished colleague found that, ordinarily, a person does not expect that a visitor to his home brings along "the added intrusion of the government's recording or listening." *Id.*

Seven years later, our state's highest court expressly approved Judge Cirillo's scholarly analysis. *Commonwealth v. Brion,* 539 Pa. 256, 652 A.2d 287 (1994). In so doing, the Supreme Court reversed a three-judge panel decision of this court which had found that our court's *en banc* decision in *Schaeffer* had been overruled *sub silentio* by subsequent Supreme Court cases. *Commonwealth v. Brion,* 381 Pa.Super. 83, 552 A.2d 1105 (1989), *rev'd,* 539 Pa. 256, 652 A.2d 287 (1994). More importantly, however, the Supreme Court offered valuable insight into the interplay between a person's right to privacy and his/her expectation that his/her oral communication is not subject to interception. Specifically, the Supreme Court stated that

> [w]e reiterate [ ] that the Act requires that a person uttering an oral communication, as that term is defined under the Act, must have a specific expectation that the contents of a discussion will not be electronically recorded. However, this expectation must be justifiable under the existing circumstances. Implicit in any discussion of an expectation that a communication will not be recorded is a discussion of the right to privacy.

*Brion,* 539 Pa. at 260, 652 A.2d at 288.

Benefiting from our Supreme Court's decision in *Brion,* a recent *en banc* panel of this court was enabled to state the

definitive approach for determining whether a person has a justified expectation under 18 Pa.C.S.A. § 5702. *Commonwealth v. McIvor,* 448 Pa.Super. 98, 670 A.2d 697 (*en banc*) (1996). Expressly finding that there is a distinction between the expectation of privacy and the expectation of non-interception, the *McIvor* court stated that

[i]n Pennsylvania, our Legislature has determined that that although intercepting a communication to which one is a party may not be a violation of a constitutional privacy interest, it so threatens the private nature of social communication as to be considered unlawful in this Commonwealth. Recognizing this concern of the legislature, any analysis of what constitutes an oral communication under the Wiretap Act cannot be limited to an analysis on strict constitutional privacy grounds. The interest protected by the Wiretap Act is directed to a right not to have one's words electronically seized under circumstances which are reasonably justified.

\* \* \* \* \* \*

[In *Brion* ], the [S]upreme [C]ourt did not rule that there must be an expectation of privacy in the recorded communication in order to bring it under the definition of "oral communication" as used by the Wiretap Act. The court merely indicated that an expectation of privacy is an important consideration in the total analysis and is crucial when the interception occurs in one's home.

448 Pa.Super. at 108, 112, 670 A.2d at 701, 704.

The *McIvor* court further noted that

in varying situations this analysis can yield differing results as to whether there is either an expectation of privacy or an expectation of non-interception. Generally, where there is an expectation of privacy there is also an expectation of non-interception. Such is not always the case, however. For instance, if one is being examined by his or her physician and knows from past experience that the doctor often carries a small tape recorder in a pocket to record patient interviews, one's expectation of non-interception is nearly

non-existent, but the expectation of privacy is still extremely high. On the other hand, if one is speaking with the town gossip at a public swimming pool under circumstances insuring that the gossip is not wearing a body wire, one's expectation of non-interception is very high, but the expectation of privacy is very low. Thus, an expectation of privacy does not always carry a concomitant expectation of non-interception, and vice versa. For purposes of violation of the Wiretap Act, while we consider the expectation of privacy as a factor, it cannot be the determining factor in our analysis.

*Id.* at 104, 670 A.2d at 700.

Thus, our inquiry in the present case becomes whether Myers had a justified expectation of non-interception. Our review of the record reveals that such a justified expectation did exist. Under the normal circumstances of everyday life, there are few instances when one would expect his/her spoken words to be intercepted. Unless a person is forewarned or simultaneously creates his/her own recording, a person is generally safe in assuming that words leaving his/her lips travel only as far as can be heard by the naked ear and then vanish into oblivion. As Judge Cirillo stated in *Schaeffer*, "[w]e find it perfectly reasonable and legitimate for an individual even in this day and age to expect that his words are not subject to warrantless government surveillance." 370 Pa.Super. at 206, 536 A.2d at 368.

In the instant case, Whitmore testified at the suppression hearing that he had been friends with Myers since boyhood. N.T. 7/22/94 at 16–17. Moreover, the Commonwealth concedes that Myers' trailer is located "in a rural area and the likelihood of being encountered by passers-by is far less than in an urban home." Commonwealth's brief at 9. Thus, we have Myers sitting on his couch, drinking beer with his childhood friend who is positioned two feet away on the door step of Myers' rural home. Are these circumstances under which Myers could have reasonably expected that his spoken words were not subject to interception? Of course they are. Any other result would ignore the realities of our daily lives./

Here, the circumstances establish not only a large expectation of privacy, but, moreover, an even greater expectation that spoken words will not go beyond the listener. Accordingly, since an order was never obtained from a Superior Court judge authorizing Whitmore to tape his conversation with Myers, we find that the lower court erred in refusing to suppress the recording.

In closing, we note that our decision does nothing to inhibit Whitmore from recounting at trial any inculpatory admission Myers may have uttered. Our decision merely serves to exclude evidence which the Commonwealth never had a right to obtain without a Superior Court judge's authorization order.

Judgment of sentence reversed and case remanded for retrial with all fruits of the illegal electronic surveillance suppressed. Jurisdiction relinquished.

POPOVICH, J., concurs in the result.