J-A32017-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| WILLIAM JAMES COST, | : | |
| Appellant | : | No. 723 MDA 2017 |

Appeal from the Judgment of Sentence April 25, 2017
In the Court of Common Pleas of Lackawanna County
Criminal Division at No(s): CP-35-SA-0000152-2016,
CP-35-SA-0000153-2016

BEFORE: OTT, J., DUBOW, J., and STRASSBURGER, J.*

MEMORANDUM BY DUBOW, J.:                    **FILED APRIL 24, 2018**

Appellant, William James Cost, appeals from the Judgment of Sentence entered by the Lackawanna County Court of Common Pleas following his convictions after a bench trial of two counts of summary Harassment.[1]  After careful review, we affirm.

Briefly, Appellant lives across the street from the Giedieviells family in Dickson City in Lackawanna County.  On February 28, 2016, Officer Christopher Tully of the Dickson City Police Department responded to the Giedieviells's home after Appellant had almost hit Shannon Giedieviells with his car.  Officer Tully issued Appellant a warning and told the Giedieviells family to document any further incidents involving Appellant in a log.

_____

[1] 18 Pa.C.S. § 2709(a)(3).

_____

* Retired Senior Judge assigned to the Superior Court.

Over the next few months, the Giedieviells family recorded "numerous incidents involving [Appellant], including using his key fob to cause his car horn to beep, sometimes up to 20 times, whenever they exited their home." Trial Court Opinion, 6/20/17, at 1-2. On May 4, 2016, Officer Tully cited Appellant for Harassment. Appellant continued to engage in this behavior, and on July 5, 2016, Officer Tully again cited Appellant for Harrassment.[2]

On September 12, 2016, a district magistrate found Appellant guilty in both cases, and Appellant filed an appeal to the Court of Common Pleas of Lackawanna County. After a trial *de novo*, the Honorable Vito P. Geroulo found Appellant guilty of the two summary offenses of Harassment on April 25, 2017. That same day, the trial court sentenced Appellant to 10 to 90 days' incarceration in each case to be served consecutively.[3]

On April 26, 2017, Appellant filed Notices of Appeal in both cases. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents seven issues on appeal:

I. Whether horn honking is a protected activity under the 14th and 1st Amendment[s]?

II. Whether pursuant to 18 [Pa.C.S.] § 2709(e) [Appellant] could not be prosecuted for engaging in protected activities?

---

[2] Officer Tully noted "36 separate acts" in the second citation.

[3] On April 28, 2017, the trial court entered a formal Order denying Appellant's summary appeal and sentencing Appellant. The trial court stayed Appellant's sentences until resolution of the instant appeal.

III. Whether there was insufficient evidence to find [Appellant] guilty of the summary offense of harassment?

IV. Whether the trial court erred by failing to allow [Appellant] the right of allocution?

V. Whether the trial court erred by not considering [Appellant's] character, age, and personal characteristics when he sentenced [Appellant] to incarceration?

VI. Whether the trial court erred in sentencing [Appellant] to incarceration since imprisonment was not necessary?

VII. Whether [Appellant] should have been given a jury trial?

Appellant's Brief at 5.[4]

## First Amendment

In his first two issues, Appellant avers that, because he "engaged in protected activity of horn honking[,]" 18 Pa.C.S. § 2709(e)[5] precluded his prosecution. Appellant's Brief at 7-11. Appellant claims that he engaged in constitutionally protected activity by honking his horn to lock and unlock his

_____

[4] As a prefatory matter, Appellant's argument section, which includes 11 distinct issues, does not correspond with the seven issues presented in his Statement of Questions Involved as required by Pa.R.A.P. 2119(a). *See*, *e.g.*, *Graziani v. Randolph*, 856 A.2d 1212, 1216 (Pa. Super. 2004) (where appellant's argument section contained "nine discrete sections that corresponded in no clear way to the three questions presented," the Court addressed only those aspects of the argument that clearly pertained to each question as stated). We need not, and will not, consider any issue that is not contained in Appellant's "Statement of Questions Involved" or that is not fairly suggested thereby. *See* Pa.R.A.P. 2116(a) (stating, *inter alia*, "No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby"); *Graziani*, *supra* at 1216.

[5] 18 Pa.C.S. § 2709(e), one subsection of the criminal Harassment statute, provides: "This section shall not apply to constitutionally protected activity."

vehicle and protect his property. *Id.* at 8. Appellant argues that "a citizen has the constitutional right to honk his horn to lock/unlock his vehicle." *Id.*[6]

In determining whether certain speech is protected by the First Amendment, which is a question of law, our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Davidson*, 938 A.2d 198, 203 (Pa. 2007).

The First Amendment generally prohibits government interference with an individual's freedom of speech. Our Supreme Court has explained that "the protections of the First Amendment do not end at the spoken and written word." *Commonwealth v. Bricker*, 666 A.2d 257, 260-61 (Pa. 1995) (quoting *Texas v. Johnson*, 491 U.S. 397, 404 (1989)).

Conduct will not be labeled speech "whenever the person engaging in the conduct intends to express an idea." *Id.* at 261 (citations omitted). Instead, the First Amendment only protects "conduct sufficiently imbued with the elements of communication [.]" *Id.* (citations omitted). The First Amendment applies fully to expression concerning "philosophical, social, artistic, economic, literary, or ethical matters." *Id.* (citation omitted).

As an initial matter, Appellant mischaracterizes the record and disingenuously recasts his own conduct as simply intentionally unlocking and

---

[6] Aside from the Statement of Questions, Appellant does not otherwise discuss or even mention the 14th Amendment in his Brief.

locking his car to protect his property, which honked the horn.[7]  The record belies Appellant's benign characterization of his conduct and intent.  The evidence showed much more: Appellant's honking was excessive, pervasive, and he also took other physical actions indicating his intent.

Given these mischaracterizations and the certified record before this Court, we conclude that Appellant's conduct does not constitute constitutionally-protected expression within the meaning of the First Amendment.[8]  Appellant's conduct did not concern philosophical, social, artistic, economic, literary, or ethical matters as described in the above cases.  Rather, Appellant's conduct demonstrated an effort to harass the Giedieviells.  He is not entitled to relief on this claim.

### Sufficiency of the Evidence

Appellant next avers that the evidence was insufficient to support his Harassment convictions.  Appellant's Brief at 11-12.  Appellant specifically

---

[7] Appellant's attempt to downplay or outright contradict the facts elicited in the lower court is more akin to a challenge to the weight of the evidence. ***See, e.g., Commonwealth v. Melvin***, 103 A.3d 1, 39 (Pa. Super. 2014) (the appellate court may not weigh the evidence and substitute its judgment for the fact-finder when examining the sufficiency of the evidence).

[8] Given our resolution of this issue, we need not address Appellant's attempt to frame his issue as a broad constitutional issue of first impression, *i.e.*, whether "a citizen has the constitutional right to honk his horn to lock/unlock his vehicle."  Appellant's Brief at 8.  ***See*** 1 Pa.C.S. § 1922; ***Commonwealth v. Veon***, 150 A.3d 435, 455-56 (Pa. 2016) (acknowledging the "canon of constitutional avoidance" and explaining that courts should not decide a constitutional question unless absolutely required to do so).

challenges the elements of intent and course of conduct. As described above, we note that Appellant's framing of his conduct mischaracterizes the record and evidence presented in the lower court. Regarding his intent, Appellant claims that his horn honking was a constitutionally protected activity and had a legitimate purpose: to lock and unlock his vehicle. Regarding his course of conduct, Appellant argues that days would go by between incidents of horn honking so the conduct was not continuous every day.

We review claims regarding the sufficiency of the evidence by considering whether, "viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." **Commonwealth v. Melvin**, 103 A.3d 1, 39 (Pa. Super. 2014). Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. **Id**. In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder. **Id**. at 39-40.

"A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person . . . engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose[.]" 18 Pa.C.S. § 2709(a)(3).

The statute defines "course of conduct" as "[a] pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct. The term includes lewd, lascivious, threatening or obscene words, language, drawings, caricatures or actions, either in person or anonymously." 18 Pa.C.S. § 2709(f). "An intent to harass may be inferred from the totality of the circumstances." *Commonwealth v. Cox*, 72 A.3d 719, 721 (Pa. Super. 2013).

Although the term "legitimate purpose" has not been clearly defined, "the import of the phrase . . . is broadly to exclude from this subsection any conduct that directly furthers some legitimate desire or objective of the actor. This element of the residual offense should limit its application to unarguably reprehensible instances of intentional imposition on another." *Commonwealth v. Wheaton*, 598 A.2d 1017, 1019 (Pa. Super. 1991) (citation omitted).

The Honorable Vito P. Geroulo, sitting as the trial court, has authored a comprehensive, thorough, and well-reasoned Opinion, citing the record and relevant case law in addressing Appellant's sufficiency claim. After a thorough review of the record, the briefs of the parties, the applicable law, and the comprehensive and well-reasoned Opinion of the trial court, we conclude that there is no merit to Appellant's sufficiency claims on appeal. Accordingly, we affirm on the basis of the trial court's June 20, 2017 Opinion. *See* Trial Court Opinion, 6/20/17, at 4-7 (concluding that the

evidence was sufficient to support Appellant's Harassment convictions because Appellant, *inter alia*, excessively honked his horn hundreds of times at all hours of the day and night while the complainants were present, including from within their driveway and even after he had been cited the first time).

### Allocution

Appellant contends that his sentence must be vacated because the trial court did not permit Appellant to exercise his right of allocution. Appellant's Brief at 16-17.

The Pennsylvania Rules of Criminal Procedure require that "[a]t the time of sentencing, the judge shall afford the defendant the opportunity to make a statement in his or her behalf[.]" Pa.R.Crim.P. 704(C)(1). It is the sentencing court's obligation to inform the defendant of his right to speak prior to sentencing. **Commonwealth v. Thomas**, 553 A.2d 918, 919 (Pa. 1989). Where the trial court fails to inform the defendant of his right, a resentencing hearing is required. **Id.**; **see also Commonwealth v. Hague**, 840 A.2d 1018, 1019 (Pa. Super. 2003) (holding that the failure to afford a defendant the right to allocution requires remand to allow for allocution prior to resentencing).

"[T]o preserve a claim of error pertaining to the right of allocution, the defendant must raise the claim before the trial court at the time of sentencing or in a post-sentence motion, or suffer waiver of the claim on

appeal." ***Commonwealth v. Hardy***, 99 A.3d 577, 579 (Pa. Super. 2014) (citing ***Commonwealth v. Jacobs***, 900 A.2d 368, 372 (Pa. Super. 2006) (*en banc*)).

Here, the trial court did not inform Appellant of his allocution right in accordance with Pa.R.Crim.P. 704(C)(1), and Appellant did not address the trial court prior to sentencing. ***See*** N.T., 4/25/17, at 64-67. However, Appellant did not raise this claim before the trial court at the time of sentencing or in a post-sentence motion. Accordingly, Appellant waived this claim. ***Hardy***, ***supra*** at 579; ***Jacobs***, ***supra*** at 372.

**Discretionary Aspects of Sentence**

Appellant next challenges the discretionary aspects of his sentence. Appellant's Brief at 17-19. Appellant presents two challenges to the discretionary aspects of his sentence. First, Appellant contends that the trial court erred by not considering Appellant's character, age, and personal characteristics during sentencing. ***Id.*** at 17-18. Second, Appellant argues that the trial court erroneously sentenced him to incarceration. ***Id.*** at 19.

Challenges to the discretionary aspects of sentence are not appealable as of right. ***Commonwealth v. Leatherby***, 116 A.3d 73, 83 (Pa. Super. 2015). Rather, an appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by (1) filing a timely notice of appeal; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify the sentence; (3) complying with Pa.R.A.P. 2119(f), which

requires a separate section of the brief setting forth "a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence[;]" and (4) presenting a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b). ***Id.*** (citation omitted).

Appellant did not preserve either issue raised in this challenge to the discretionary aspects of his sentence: he failed to raise them at sentencing, and he did not file a post-sentence motion or motion to reconsider his sentence presenting these issues to the trial court.

In addition, Appellant failed to include a Pa.R.A.P. 2119(f) Statement in his Brief addressing his challenges to the discretionary aspects of his sentence. The Commonwealth has objected to its omission. ***See*** Commonwealth's Brief at 8-9. Appellant has, thus, waived his challenge to the discretionary aspects of his sentence. Pa.R.A.P. 2119(f). ***See also Commonwealth v. Sanchez***, 848 A.2d 977, 986 (Pa. Super. 2004) (holding that appellant waived challenge to discretionary aspects of sentence where he failed to include in his brief a Pa.R.A.P. 2119(f) Statement).

## Right to Jury Trial

In his final claim, Appellant argues that he was erroneously deprived of his right to a jury trial. Appellant's Brief at 22-23.

A defendant is entitled to a jury trial where he or she "faces a charge which, alone, could lead to imprisonment beyond six months."

*Commonwealth v. Harriott*, 919 A.2d 234, 237 (Pa. Super. 2007) (citation omitted). In contrast, a defendant is not entitled to a jury trial "if an offense bears a maximum incarceration of six months or less." *Id.* (citation omitted).

"Similarly, where a defendant is tried for multiple offenses which do not individually allow for imprisonment exceeding six months, there is no jury trial right on those particular offenses, even if multiple convictions could yield an aggregate incarceration above six months." *Id.* (citation omitted). In *Commonwealth v. McMullen*, 961 A.2d 842, 847 (Pa. 2008), our Supreme Court held that a defendant has no right to a jury trial simply because the petty crimes with which he is charged expose him to an aggregate sentence greater than six months.

In the instant case, the Commonwealth charged Appellant with two counts of Harassment as a summary offense, each of which carried a maximum sentence of not more than 90 days' imprisonment. *See* 18 Pa.C.S. § 1105 ("Sentence of imprisonment for summary offenses"). Pursuant to *Harriott* and *McMullen*, Appellant was not entitled to a jury trial. Thus, this claim merits no relief.

The parties are instructed to attach a copy of the trial court's June 20, 2017 Opinion to all future filings.

Judgment of Sentence affirmed.

Judge Ott joins this memorandum.

Judge Strassburger files a concurring memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/24/18

MAURI R. KELLY
LAC                    TY

2017 JUN 20  A 9.5.


COMMONWEALTH OF                 : IN THE COURT OF COMMON PLEAS
PENNSYLVANIA                    :       OF LACKAWANNA COUNTY
                                :
        vs.                     :       CRIMINAL ACTION
                                :
WILLIAM JAMES COST,             :
             Defendant          :       NOS. 16-SA-152 & 153

## OPINION

### GEROULO, J.

On September 12, 2016, Defendant William Cost was convicted before a district magistrate judge of two counts of harassment in the above-captioned cases. The defendant appealed to this court, and on April 28, 2017, following a summary appeal trial on April 25, 2017, this court found the defendant guilty of both charges. He was sentenced to 10 to 90 days of incarceration in each case. On April 26, 2017, the defendant filed a Notice of Appeal of the judgment of sentence to the Superior Court. This opinion is filed in compliance with Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.

### I. BACKGROUND

. On May 4, 2016, Officer Christopher Tully of the Dickson City Police Department filed a citation, charging the defendant with harassment. The defendant lives on Bank Street in Dickson City, across the street from the Giedieviells family. The events that led to this citation began on February 28, 2016, when Officer Tully

Appendix 6

was called to the Giedieviells' home because the defendant had almost hit Shannon Giedieviells with his car. Officer Tully issued a warning and told the Giedieviells family to keep a log of incidents that occurred with the defendant. The family did so and recorded numerous incidents involving the defendant, including using his key fob to cause his car horn to beep, sometimes up to 20 times, whenever they exited their home. After the first citation was issued, the defendant continued to engage in this behavior. Officer Tully filed the second citation on July 5, 2016.

On September 12, 2016, District Magistrate John Pesota found the defendant guilty of harassment in both cases. On October 6, 2016, the defendant filed a notice of summary appeal. On April 25, 2017, a trial was held before this court, and on April 28, 2017, this court issued an order denying the summary appeal and sentenced the defendant to 10 to 90 days in Lackawanna County prison in each case, but stayed the sentences until his appeal is decided. On April 26, 2017, the defendant filed a Notice of Appeal of the judgment of sentence to the Superior Court, and this court ordered him to file a concise statement of the matters complained of on appeal within 21 days pursuant to Pa.R.A.P. 1925(b). On May 9, 2017, the defendant filed a Statement of Matters Complained of on Appeal, and on May 12, 2017, filed an amended statement.

## II. DISCUSSION

### A. Defendant's Statement

In his statement, the defendant submits that the issues for appeal are: (1) whether horn honking is a protected activity under the First Amendment, and therefore precluded as a basis for a harassment charge; (2) whether the evidence was sufficient to support a conviction for harassment and whether the Commonwealth failed to show that the defendant had the intent to annoy, alarm or harass the victims; and (3) whether the sentence was inappropriate since the Commonwealth did not seek a jail sentence, the court failed to consider the proper factors, other summary appeal defendants

2

sentenced on the same date as the defendant did not receive a sentence of jail time, other defendants who have been convicted of harassment did not receive a sentence of jail time, the sentences should have merged since the same facts were the basis for both charges, and the defendant was denied his right to allocution and a jury trial.

## B. Analysis

The defendant asserts that horn honking is a protected activity under the First Amendment and the trial court erred when it held that it was not protected speech. As this court found at the time of trial, any action, even a constitutionally protected action, when carried to excess can be annoying, harassing and alarming to other individuals. Transcript of April 25, 2017 Summary Appeal Trial at 64. The Superior Court has held that there is no First Amendment protection for speech that is intended to alarm or annoy another person. Commonwealth v. Duncan, 363 A.2d 803 (Pa. Super. 1976). This is because the courts cannot enforce freedom of speech at the expense of rights of others, and speech that is intended to alarm or annoy invades the privacy interests of others and is prohibited by 18 Pa.C.S.A. § 2709. Id. Moreover, words and sounds alone can constitute harassment. Commonwealth v. Lutes, 793 A.2d 949 (Pa. Super. 2002); Commonwealth v. Barzyk, 692 A.2d 211 (Pa. Super. 1997). See also Commonwealth v. George, 2014 WL 10980151 (Pa. Super. 2014) (sounding car horn, pointing laser light, and yelling out the window are not protected activities and can constitute a course of conduct intended to harass, annoy or alarm a person). Here, the defendant did not deny that he engaged in the excessive horn honking, sometimes up to 20 times, whenever his neighbors left their home, but rather argued that it was protected activity. Because excessive horn honking that alarms and

3

annoys others is prohibited by 18 Pa.C.S.A. § 2709 and can constitute harassment, the defendant's claim fails.

The defendant also asserts that the evidence was insufficient to prove that he committed harassment. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission of the crime by the accused, beyond a reasonable doubt. Commonwealth v. Johnson, 910 A.2d 60 (Pa. Super. 2006). When reviewing a sufficiency claim, the court must view the evidence in the light most favorable to the Commonwealth, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Id. at 64. A sufficiency argument that is founded upon disagreement with the credibility determinations made by the fact finder, or discrepancies in the accounts of the witnesses, does not warrant relief, for it is within the province of the fact finder to determine the weight to be accorded each witness's testimony and to believe all, part or none of the evidence introduced at trial. Id.

A defendant is guilty of harassment when, with the intent to harass, annoy or alarm another person, he engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose. 18 Pa.C.S.A. § 2709(a)(3). A course of conduct is a pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct. 18 Pa.C.S.A. § 2709(f). Intent to harass may be inferred from the totality of the circumstances. Lutes, 793 A.2d at 961.

In this case, Shannon Giedieviells testified that she lives across the street from the defendant, and that on February 28, 2016, as she was stepping into her boyfriend's

4

car, the defendant drove past his own house and drove toward her very fast, missed hitting her by 5 to 8 inches, and drove up into her yard. Transcript of April 25, 2017 Summary Appeal Trial at 13-14. She testified that after this incident, any time that she came out of her home, or any guests entered or exited her home, she could see the defendant using his key fob to beep the horn of his car excessively. Id. at 15-16. She testified that most of the time, the defendant would not get into his car, but would just stand in his yard beeping the horn. Id. at 16. She kept a log of the multiple times that he engaged in this behavior, and recorded over 100 incidents. Id. at 16, 25. She testified that he would beep the horn 5 to 8 times, and sometimes 20 times. Id. at 17. She testified that she remembered that on February 21, 2016, she had guests over who were sitting on her porch and the car horn went off 20 times. Id. She testified that this behavior happened multiple times a day, and at all hours of the day and night. Id.

Renee Giedieviells, Shannon's mother, testified that she also experienced the excessive horn beeping, and remembered one incident when she was getting pizza out of her car and saw the defendant point his key fob at her and beep the horn 8 times. Id. at 27. She testified that the defendant did not go into his car or near his car. Id. She testified that she also experienced the incident on February 21, 2016, when the family was on the porch and the defendant caused the horn to beep 20 times. Id. at 29. She testified that it was directed at her family and that she saw the defendant pointing the key at her. Id.

Ryan Buckley, Shannon's boyfriend, testified that on February 28, 2016, as he and Shannon were standing on the curb entering his car, the defendant drove down the street very fast, past his own house, and past his driveway, and pulled in almost hitting

5

Shannon and putting his front passenger tire into the yard. Id. at 40. He testified that the defendant then backed up, turned around and pulled into the spot in front of his house. Id. He testified that the car was 5 to 8 inches away from Shannon. Id. at 41. He testified that he has observed the defendant beeping his car horn very often, and remembered one incident where the defendant pulled his car into the Giedieviells' driveway and laid on the horn. Id. He testified that another time, when he was letting the dog out, the defendant pulled up in front of the house, waved at him and beeped his horn. Id. He testified that both of these incidents occurred before February 28, 2016. Id. at 42.

The defendant testified that he uses his car for work, and stores supermarket supplies in it, so he has to go back and forth to his car a lot. Id. at 47. He testified that numerous times during the day, he goes into his car to get stuff and pushes the locking button once to lock the driver door, and beeps it four times to lock the passenger door and trunk to make sure that everything is locked. Id. at 48. He testified that when he locks the car numerous times, he wants people to know that his car is locked and secure. Id. He testified that it was not his intent to annoy, harass or alarm Shannon or her family. Id.

As this court found at the time of the trial, beeping the horn once or twice is one thing, but 20 times or 6 times is intended to harass and this can be inferred from the evidence. Id. at 65. The court found that while no one could expressly testify as to the defendant's intent, the testimony of the Giedieviells was credible, and the testimony of the defendant was not credible. Id. The court found that this was a dead end street, that it did not have a lot of traffic, and the court could not see a legitimate

6

purpose to honking the horn numerous times at all hours of the day and night. Id. The court found that doing it in the way described by the victims showed that it was with the intent of causing inconvenience, annoyance or alarm. Id. The court found that it was a course of conduct since it was happening so often. Id. Even after the defendant received the first citation for engaging in this behavior, filed on May 4, 2016, he continued the excessive horn honking until after the second citation was issued. Thus, there was sufficient evidence for this court to conclude that the defendant engaged in a course of conduct that alarmed or seriously annoyed the victims, that served no legitimate purpose, and that was intended to annoy, harass or alarm the victims. The Commonwealth established each material element of the crime charged beyond a reasonable doubt and the evidence was sufficient to support the defendant's convictions.

Finally, the defendant argues that his sentence was inappropriate since the Commonwealth did not seek a jail sentence, the court failed to consider the proper factors, other summary appeal defendants sentenced on the same date as the defendant did not receive a sentence of jail time, other defendants who have been convicted of harassment did not receive a sentence of jail time, the sentences should have merged since the same facts were the basis for both charges, and the defendant was denied his right to allocution and a jury trial. A claim that the sentence imposed by the trial court was inappropriate is a challenge to the discretionary aspects of the sentence. Commonwealth v. Seagraves, 103 A.3d 839 (Pa. Super. 2014); Commonwealth v. Marts, 889 A.2d 608 (Pa. Super. 2005). In order to challenge a discretionary aspect of sentencing, the defendant must show that there is a substantial question that the

7

sentence imposed is not appropriate under the Sentencing Code or contrary to the fundamental norms underlying the sentencing process. Id. Although the sentencing guidelines do not apply to summary offenses, a person convicted of a summary offense may be sentenced to a term of imprisonment, as long as the maximum is not more than 90 days. 18 Pa. C.S.A. § 106. Moreover, if a sentence of imprisonment has been imposed after a trial de novo in a summary proceeding, the trial judge must direct the defendant to appear for the execution of sentence on a date certain unless the defendant files a notice of appeal within the 30 day time period. Pa. R. Crim. P. 462. This court complied with these requirements here. The defendant's argument that other summary appeal defendants sentenced by the court and other summary appeal defendants convicted of harassment sentenced by other courts did not receive sentences of imprisonment is irrelevant and not a factor that the court must consider. Furthermore, the defendant's argument that the sentences for the two cases should have merged is misplaced since the defendant did not halt the behavior after the first citation was issued, and it was the excessive horn honking after the first citation was issued that led to the second citation. Because the defendant has not demonstrated that the sentence imposed was not appropriate and contrary to the norms of the sentencing process, the sentence was not inappropriate here.

8                    Appendix 13

**BY THE COURT:**

_____, J.

cc: Cynthia Pollick, Esq.
    Office of District Attorney

9